## Meza v Old Republic Ins. Co.

2025 NY Slip Op 32300(U)

June 27, 2025

Supreme Court, New York County

Docket Number: Index No. 153776/2022

Judge: James G. Clynes

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. JAMES G. CLYNES** PART ___39___

_Justice_

--------------------------------------------------------------------------X

ROY MEZA,

INDEX NO. ___153776/2022___

Plaintiff,

- v -

OLD REPUBLIC INSURANCE COMPANY and CHUBB
INSURANCE CO.,

Defendants.

-----------------------------------------------------------------------X

On May 3, 2022, Plaintiff commenced this first party action for Uninsured Motorist (UM), Underinsured Motorist (UIM), Supplementary Uninsured Motorist (SUM) insurance coverage for personal injuries sustained as the result of a March 6, 2018 motor vehicle accident involving a vehicle in which plaintiff was a passenger.

By Decision and Order dated August 1, 2023, the court granted plaintiff's motion for summary judgment on the issue of liability and ordered the matter to proceed to trial on the issue of damages only.

By Decision and Order, dated July 29, 2024, the court denied the motion by defendants Old Republic Insurance Company and Chubb Insurance Co pursuant to CPLR 2221 (d) for an Order granting leave to reargue the August 1, 2023 Decision and Order.

On December 23, 2024 this action was discontinued against defendant National Union Fire Insurance Company of Pittsburgh only.

This matter was referred to this court for a nonjury trial on the issue of damages only and a nonjury trial was conducted on February 4, 2025, February 6, 2025, and February 13, 2025. Both parties submitted post-trial submissions on February 27, 2025.

The following witnesses testified at trial: Plaintiff Roy Meza, Dr. Steven Ross, Dr. Steven Yager, Dr. Emmanuel Hostin (orthopedic surgeon), Dr. Chaim Mandelbaum,

The following exhibits were admitted into evidence: Exhibit 1 (IRS Wage and Income Transcript for Plaintiff Roy Meza for years 2017 through 2022), Exhibit 2 (Certified Medical Records New York Spine Institute June 25, 2018), Exhibit 3 (March 4, 2020 records from Bay

[* 1]

Ridge Orthopedic Associates, P.C. [Dr. Baum]), Exhibit 4 (MRI disc), Exhibit 5 (Certified Records from Steven Yager – New York Foot and Ankle Institute), Exhibit 6 (MRI disc), exhibit 7 (April 4, 2018 Report of MRI Left Ankle), Exhibit 8 (Certified Medical Records - Dr Steven Ross Physical Medicine & Rehab), Exhibit 9 (Certified Medical Records - Dr. Chaim Mandelbaum Comprehensive Pain Management), Exhibit 10 (MRI of Plaintiff's left knee and right shoulder dated March 22, 2018), Exhibit 11 (MRI of Plaintiff's right shoulder dated December 30, 2024), and Exhibit 12 (Dr. Emmanuel Hostin records).

Upon consideration of the parties' opening and closing statements, the exhibits entered into evidence, the pleadings, and the testimony of Plaintiff, and Doctors Steven Marc Yager (D.P.M., F.A.C.F.A.S), Steven Ross, Chaim Mandelbaum and Emmanuel Hostin, the court makes the following findings of fact and conclusions of law on the issue of damages sustained by plaintiff as a result of the March 6, 2018 motor vehicle accident.

Meza credibly testified that he sustained injuries to his left ankle, left knee, left hip, right shoulder, neck and back as a result of the March 6, 2018 motor vehicle accident involving a vehicle in which plaintiff was a seat-belted rear seat passenger. At the time of the accident Meza was earning approximately $35,000 annually as an apprentice in heating and air conditioning. As a result of the accident, Meza was hospitalized from March 6, 2018 until March 12, 2018 and was placed out of work by his treating physician and did not return to full-time employment until July 2023, when he began working as a truck driver with substantial accommodations from his employer, including being assigned a helper. Meza testified credibly about his medical treatment with Dr. Yager, Dr. Ross, Dr. Mandelbaum, Dr. Hostin and an acupuncturist. Mr. Meza was 29 years old on the date of the accident and is now 35 years old. Meza credibly testified that he had no prior injuries or complaints of pains to any of the body parts he claims were injured as a result of the accident, that he had no subsequent injuries to those body parts, and that he is continuing treatment with all of his physicians to delay necessary future surgeries to his injured body parts as detailed in the testimony of his surgeons.

On March 14, 2018, Meza sought care from Dr. Steven Ross for pain in his neck, mid back, lower back, right shoulder, left hip, left knee, and for headaches and anxiety. MRIs conducted at the request of Dr. Ross on March 20, 2018 and March 23, 2018 of Meza's neck, back, right shoulder, and left knee showed cervical herniation at C6-C7 and bulges at C3-C5 and lumbar bulges at L1-L4, herniations at L4-L5 and L5-S1, a right shoulder tear and left knee tear.

[* 2]

MRIs conducted on April 20, 2018 on Meza's left ankle showed a tear of the anterior talofibular ligament (ATFL) with calcaneofibular ligament (CFL) sprain surrounding anterolateral and lateral malleolar region edema along with multifocal tenosynovitis more prominent at the flexor hallucis longus (FHL) and fleor digitorum longus (FDL), a deep deltoid ligament strain, additionally focal osteochondral injuries were found, along with fluid and unstable osseous fragment cannot be excluded.

Dr. Steven Ross, a licensed physician specializing in physical medicine and rehabilitation credibly testified that he first saw Mr. Meza on March 14, 2028, that Mr. Meza currently continues to treat with him, and that over the last seven years Mr. Meza has visited Dr. Ross personally or with his physical therapy facility more than 200 times. Dr. Ross treated Mr. Meza for his left ankle, left knee, right shoulder, neck, back and head and headaches all of which were causally related to this motor vehicle accident. At the time of the initial visit with Dr. Ross, Mr. Meza was walking with a cane and had difficulty with mobility. Based on his clinical examination of Mr. Meza, which showed significant limitations in range of motion, and Mr. Meza's history and the complaints, Dr. Ross referred Mr. Meza for MRIs of his head, neck, back, left ankle, left knee and right shoulder.

Upon reviewing Mr. Meza's MRIs, which revealed multiple tears in multiple body parts, Dr. Ross referred Mr. Meza to the appropriate specialists: Dr. Hostin for his left knee and right shoulder, Dr. Yager for his left ankle, and Dr. Demoura for his neck and back. While Mr. Meza was treating with these specialists, Dr. Ross continued to treat all of Mr. Meza's underlying injuries through his physical therapy and rehabilitation facility. Dr. Ross noted the significant and consequential reductions in the range of motion and pain to Mr. Meza's left ankle, left knee, right shoulder, neck and back. Dr. Ross testified credibly that all of Mr. Meza's underlying injuries were causally related to the March 6, 2018 motor vehicle accident. Dr. Ross credibly testified that Mr. Meza's prognosis for a full recovery is poor and that he faces significant future medical needs and costs in the amount of $809,000, including $108,000 for physical therapy (twice per month at $100 per session or $2,400 annually for 45 years); $36,000 for physiatry (four times annually at $200 per session for 45 years); $135,000 for follow up visits with specialized orthopedists for his shoulder, ankle and knee ($250 per visit four times per year for each of three specialists [$3,000 annually] for 45 years); $45,000 for pain management ($250 per visit four times per year for 45 years); $225,000 for annual MRIs of five body parts ($1,000 per image of each of five body parts for 45 years); $60,000 for electrodiagnostic tests every three years ($2,000 for each part of a two-

Page 3 of 8

[* 3]

part test or $4,000 each for 15 tests over 45 years); $9,000 for epidural steroid injections into the cervical and lumbar spine ($1,500 per injection for three injections each into the cervical and lumbar spine); and $200,000 for fusion surgeries for both his cervical and lumbar spine ($100,000 each for cervical and lumbar fusion surgeries).

Dr. Steven Yager, D.P.M., Board Certified in Foot and Ankle Surgery, credibly testified at trial that he began treating Mr. Meza after a referral from Dr. Steven Ross, on May 10, 2018 and following a short course of physical therapy performed surgery on Meza's left ankle on June 22, 2018 to repair among other things a torn anterior talofibular ligament (ATFL). Dr. Yager testified that it was his opinion within a reasonable degree of medical certainty that the March 6, 2018 motor vehicle accident was the cause of the injury to Mr. Meza's left ankle.

Dr. Yager testified about intraoperative photographs of the interior of Mr. Meza's left ankle and pointed to the multiple fragments/fractures that were contained in the ankle as a result of this March 6, 2018 accident and explained that 4 of the 6 ligaments in Mr. Meza's ankle were torn as a result of the accident. Dr. Yager testified that a recent MRI of Mr. Meza's left ankle indicates mild arthritis and small bodies floating within his body along with postsurgical changes and that as a result of the accident, Mr. Meza has a very poor prognosis and that his ankle will never be restored to a normal joint, and he faces future surgeries. Dr Yager testified that Mr. Meza's is too young for a joint implant, which only lasts 10 years and that the other available options are a fusion of his entire ankle space, which is not a realistic option for Mr. Meza due to his age. Dr. Yager testified that Mr. Meza faces a series of arthroscopy debridements and surgeries every few years that will not fix his ankle but might delay the need to have the other two surgeries discussed. Dr. Yager testified that the costs of each of the four anticipated repeat ankle debridement procedures would range from $50,000 to $72,000, that the cost of an ankle implant surgery would be $150,000, and that the cost of a total ankle fusion surgery would be $80,000. Dr. Yager testified that Mr. Meza should continue with physical therapy at least two to three times a week "until they throw him out" at a cost of approximately $150 per session, which would amount to an annual physical therapy cost of $15,600 (twice per week) or $23,400 (three times per week) for the rest of Mr. Meza's life. Dr. Yager testified that there is no dispute that Mr. Meza's injuries are causally related to the March 6, 2018 motor vehicle accident and is the cause of Mr. Meza's pain today.

Dr. Mandelbaum is a double board certified (anesthesiology and pain medicine) licensed physician in the State of New York. His medical records were received in evidence by this Court,

[* 4]

without objection. Dr. Mandelbaum first saw Mr. Meza in August 2023 for pain management due to the increasing pain in his left knee, left ankle, right shoulder, neck and back. Dr. Mandelbaum examined Mr. Meza, and documented a significant and consequential decrease in ranges of motion for all his injured body parts, along with the objective evidence (MRIs, reflexes, palpations and spasms) and Mr. Meza's complaints of pain. Based upon his review of the MRI films of Mr. Meza and his examination, Dr. Mandelbaum concluded that Mr. Meza was exhibiting symptoms of disc herniations with no prior history of neck or back pain or other significant injuries and tears to his left ankle, left knee and right shoulder and hip. Prior to his first visit, Mr. Meza had already undergone surgeries and exhaustive physical therapy. Dr. Mandelbaum prescribed a course of pain management treatment including pain patches, anti-inflammatories, gels and oral medications, along with physical therapy. Dr. Mandelbaum discussed future interventions with Mr. Meza including injections and surgeries in conjunction with pain management and physical therapy to help manage his ongoing symptoms. Dr. Mandelbaum also testified that as Mr. Meza ages, his injuries would continue to progress and get worse and require future medical care and costs including medications, pain patches costing $500 per month and spinal injections in the amount of $2,000 each plus facility fees.

Dr. Hostin is a board-certified orthopedic surgeon who treated and performed surgery on Mr. Meza. Dr. Hostin testified that Mr. Meza was referred to him by Dr. Ross for complaints about his right shoulder and left knee and that he first saw Mr. Meza on April 4, 2018. Dr. Hostin testified that he reviewed MRIs of Mr. Meza's right shoulder and left knee and that they revealed rotator cuff tendonosis and a partial rotator cuff tear of his right shoulder, and a chrondral injury of the patella and a tear of the lateral meniscus of his left knee. Dr. Hostin performed a thorough examination of Mr. Meza which included range of motion testing and noted Mr. Meza's range of motion was significantly diminished. Dr. Hostin recommended surgical intervention for Mr. Meza's left knee and recommended a course of physical therapy for his right shoulder. The surgery for his left knee consisted of an arthroscopic surgery which further revealed a tear of the medial meniscus. After the surgery to Mr. Meza's left knee, and post operative visits with Dr. Hostin, Mr. Meza continued to undergo physical therapy treatments with Dr. Ross. In 2024, Dr. Hostin ordered an updated MRI for Mr. Meza's right shoulder and reexamined Mr. Meza's right shoulder and left knee. Dr. Hostin testified that Mr. Meza's left knee will not get better, and that it would either stay the same or get worse because the articular cartilage had been injured and will not heal, it will

always be damaged and the knee is more vulnerable for additional damage. He testified that Mr. Meza's complaint of the knee giving way intermittently indicated that there was more progression of the articular cartilage injury to the knee, Dr. Hostin testified that Mr. Meza will need to undergo future surgeries to his left knee and that there are two options. The first option is an autologous chrondrocyte implantation, an open surgical procedure involving the harvesting and reimplanting of cartilage from the joint. The second option is a partial total knee replacement. Dr. Hostin also testified that Mr. Meza's shoulder is correctible with surgery, but probably not with just physical therapy. Dr. Hostin testified that the ACI (harvest procedure with all associated costs) would be $50,000, that the cost of partial total left knee replacement would be $90,000 and that the cost of the right shoulder surgery would be $45,000. Dr. Hostin testified that Mr. Meza's injuries are causally related to the motor vehicle accident on March 6, 2018.

The Court finds that the Plaintiff has established that he sustained a "serious injury" within the meaning of Insurance Law 5102 (d) and 5104 under the categories of "fracture" in relation to plaintiff's left ankle and under the categories of Permanent Consequential Limitation of Use of a Body Organ Or Member and the Significant Limitation of Use of a Body Function or System categories and that he sustained non-permanent medically determined injuries that prevented performance of his usual and customary daily activities for 90 out of the first 180 days with respect to the injuries sustained as a result of the accident to his left knee, left ankle, right shoulder, neck and back.

The testimony of plaintiff and his medical experts is unrebutted by Defendant.

Based on the reliable and credible testimony and evidence in this case, including the objective medical evidence from plaintiff's medical experts, the court credits and accepts the unrefuted testimony of plaintiff and his treating doctors that as a result of the subject accident on March 6, 2018, Mr. Meza sustained injuries satisfying the serious injury threshold within the meaning of Insurance Law 5102 (d) and 5104, specifically a facture to his left ankle, permanent consequential and significant limitations to his left knee, right shoulder, neck and back and that he sustained non-permanent medically determined injuries that prevented performance of his usual and customary daily activities for 90 out of the first 180 days immediately following his injuries. The Court finds that Plaintiff has demonstrated entitlement to an award of damages in the amount of $8,876,500.00 against Defendants Old Republic Insurance Company and Chubb Insurance Company plus costs and interest from August 20, 2020 until the date of judgment.

[* 6]

Plaintiff is awarded damages in the amount of awarded damages for past pain and suffering from the date of the accident to the date of this decision and order in the amount of $1,400,000.

Plaintiff is awarded damages for future pain and suffering and loss of enjoyment of life in the amount of $2,700,000 for a period of 45 years.

Plaintiff is awarded damages for past lost earnings in the amount of $182,500.

Plaintiff is awarded damages for future medical expenses in the total amount of $2,297,000 for a period of 45 years for the following items:

- $36,000 for physiatry (four times annually at $200 per session for 45 years);

- $135,000 for follow up visits with specialized orthopedists for his shoulder, ankle and knee ($250 per visit four times per year for each of three specialists [$3,000 annually] for 45 years);

- $45,000 for pain management ($250 per visit four times per year for 45 years);

- $225,000 for annual MRIs of five body parts ($1,000 per image of each of five body parts for 45 years);

- $60,000 for electrodiagnostic tests every three years ($2,000 for each part of a two-part test or $4,000 for 15 tests over 45 years);

- $9,000 for epidural steroid injections into the cervical and lumbar spine ($1,500 per injection for three injections each into the cervical and lumbar spine); and

- $200,000 for fusion surgeries for both his lumbar and cervical spine ($100,00 each for cervical and lumbar fusion surgeries);

- $430,000, the total cost of for four repeated ankle debridement procedures (ranging from $50,000 to $72,000 each [$200,000]), the cost of an ankle implant surgery in the amount of $150,000, and that the cost of a total ankle fusion surgery would be in the amount of $80,000;

- $702,000 for future costs of physical therapy (two times per week in the amount of $150 per session [$15,600 annually] for 45 years)

- $270,000 for the cost of pain patches in the amount of $500 per month ($6,000 per year) for 45 years; and

- $185,000 for future knee and right shoulder surgeries including the ACI procedure on the left knee ($50,000), the left knee replacement ($90,000) and the right shoulder surgery ($45,000).

[* 7]

Accordingly, I find that Plaintiff is awarded $8,876,500.00 in damages against Defendants Old Republic Insurance Company and Chubb Insurance Company, plus costs and interest from August 29, 2020.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED and ADJUDGED that Plaintiff is awarded damages in the amount of $8,876,500.00 with statutory interest from August 20, 2020, until the date judgment is entered at the rate of 9% per annum plus costs; and it is further

ORDERED that the Clerk shall enter judgment in favor of Plaintiff and against Defendants Old Republic Insurance Company and Chubb Insurance Company in the amount of $8,876,500.00 with statutory interest from August 20, 2020, until the date judgment is entered at the rate of 9% per annum plus costs.

This constitutes the Decision and Order of this Court.

DATE: 6/27/2025

JAMES G. CLYNES, JSC

Check One:    [X] Case Disposed        [ ] Non-Final Disposition

Page 8 of 8

[* 8]